IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| JONATHAN BENNETT and <br> BELINDA BENNETT, <br> <br> Plaintiffs, <br> <br> vs. <br> <br> FORD MOTOR COMPANY, <br> <br> Defendant. | ) <br> ) <br> ) <br> ) <br> )    CV 01-J-2294-J <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION

Currently pending before the court is defendant's motion for partial summary judgment (doc. 19), defendant's brief in support of their motion, defendant's evidentiary submission in support of its motion, plaintiffs' brief in opposition to the defendant's motion, plaintiffs' evidentiary submission in support of their opposition brief and defendant's response to the plaintiff's opposition. The court has reviewed the defendant's motion and the parties other submissions.

### I. Factual Background

On April 20, 1999, plaintiffs purchased a new 1999 Ford SVT Cobra Mustang. Plaintiffs purchased this vehicle in part based upon Ford's advertising which indicated that this was a high-performance vehicle with 320 horsepower and a "newly designed" performance enhancing rear suspension. Jonathan Bennett's Depo., 30-32.

However, plaintiffs' car produced significantly less than the 320 horsepower

1

advertised and the suspension caused rear-end vibrations in the car. Jonathan Bennett's Depo., 41. In August 1999, defendant sent a notice to all owners of the 1999 Ford SVT Cobra Mustang acknowledging the horsepower shortfall and indicating that the defendant was working on correcting the problem. Plaintiffs' Brief, Exh. 3. Subsequently, plaintiffs sent defendant a letter identifying the problems with their vehicle and asked that their vehicle be repurchased. *Id.* at Exh. 4. Plaintiffs received no response from this letter and thus submitted a "Dispute Settlement Board Application" to Ford's Dispute Settlement Board.[1] *Id.* at Exh. 5. On October 14, 1999, the Board denied plaintiffs' request for a vehicle refund. *Id.* at Exh. 8. On October 19, 1999, plaintiffs sent their car via wrecker to the dealership along with a letter demanding that the horsepower and vibration problems be fixed or they would file a lemon law claim. *Id.* at Exh. 9. On October 29, 1999, plaintiffs sent another letter to the Ford dealership from which they purchased the automobile indicating their intention to file a lemon law claim. *Id.* at Exh. 10. Ford's District Manager and Region Service Engineer received the letter but again denied plaintiffs' request for a refund. *Id.* at Exh. 11. On November 10, 1999, the Ford dealership indicated that they had fixed the rear-end vibration. *Id.* Plaintiffs sent a technician to the dealership to determine if the problem had been fixed, but he determined that the rear-end vibration remained. *Id.* at Exh. 12. Additionally, a free-fix for the horsepower problem was implemented by Ford in November of 1999, although there is a

---

[1] Plaintiffs subsequently amended this application to include a claim relating to a vibration problem at the rear of the car. Plaintiffs' Brief, Exh. 6.

dispute between the parties as to whether the plaintiffs refused this fix.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-moving party to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro. 56(e). In

meeting this burden the non-moving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed. R. Civ. Pro. 56(c); *Matsushita*, 475 U.S. at 587. *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case...A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000), quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir. 1991).

### III. Analysis

#### A. Lemon Law Violation

Plaintiffs brought an action alleging that defendant was in violation of Alabama's "lemon law." Alabama's "lemon law" is designed to allow an individual to sue a manufacturer for major defects in a new vehicle after giving that manufacturer an opportunity to rectify the problem. ALA. CODE. § 8-20A- 1 *et seq.* In order to bring an

action for violation of the "lemon law," a consumer must first meet the statutory pre-requisites of the statute. These pre-requisites are the (1) delivery of a letter by certified mail to the manufacturer demanding correction of the defect and (2) providing the manufacturer an opportunity to "cure the non-conforming condition." ALA. CODE § 8-20A-3(a).

In the instant case, plaintiffs have clearly failed to strictly adhere to the "lemon law's" provisions. Plaintiffs did send a letter to the auto dealership indicating that there was a problem with their car and that if they did not fix it they would bring an action under the lemon law. Plaintiffs' Brief, Exh. 9-10. However, plaintiffs (1) failed to mail this letter by certified mail and (2) mailed the letter to the dealership rather than the manufacturer. Thus, plaintiffs have failed to comply with strict statutory pre-requisites. As plaintiffs have failed to cite to any authority allowing this court to abrogate these strict pre-requisites, plaintiffs' claim must fail. Therefore, defendant is entitled to summary judgment as to plaintiffs' claim for violation of the lemon law.

**B. Negligence / Wantonness Claims**

Plaintiffs have also brought claims for negligence and wantonness against the defendant based upon its alleged failure to "properly, engineer, manufacture, assemble, market and sale [sic] the 1999 SVT Cobra." Complaint at ¶ 52. However, defendant asserts that such claims are barred under Alabama law by the economic loss doctrine.

5

The economic loss doctrine "bars a plaintiff from recovering under a tort in which the product caused property damage only to itself." *Carrell v. Masonite Corp.*, 775 So.2d 121, 124 (Ala. 2000) *citing Lloyd Wood Coal Co. v. Clark Equip. Co.*, 543 So.2d 671 (Ala. 1989). Alabama courts have applied this rule to a variety of torts including negligence, wantonness and the AEMLD. *Ford Motor Co. v. Rice,* 726 So.2d 626, 631 (Ala. 1998).

Plaintiffs' claims for negligence and wantonness fall squarely within the definition of those actions barred by the economic loss doctrine as this action has been brought solely to recover for damage to the property itself. Therefore, defendant's motion for summary judgment as to the plaintiffs' negligence and wantonness claims is granted.

**C. Breach of Implied Warranty**

In Count III of their complaint, plaintiffs' allege a breach of express and implied warranties on the part. Defendant moved for summary judgment as to the plaintiffs' implied warranty claim because it asserted that it was not in privity of contract with the plaintiffs thereby barring the plaintiffs' claim.

The implied warranty of merchantability provides that any goods sold must be "merchantable." Ala. Code § 7-2-314. Liability for a breach of the implied warranty of merchantability is limited to a "seller," who is defined under the Alabama Code as "a person who sells or contracts to sell goods." §§ 7-2-103(1)(d), 314. The Alabama

6

Supreme Court has held that, "[t]here is no right of action on an implied warranty theory against a manufacturer for property damage without privity of contract." *Rhodes v. General Motors Corp.*, 621 So.2d 945, 947 (Ala. 1993) *quoting Wellcraft Marine v. Zarzour*, 577 So.2d 414, 419 (Ala. 1990). However, a manufacturer will be in privity of contract with a purchaser if the seller acted as an agent for the manufacturer. *Wellcraft Marine*, 577 So.2d at 419.

Here, plaintiffs are suing the manufacturer (Ford) for breach of implied warranty and have put forth no evidence to indicate that the seller (the dealership) was acting as the defendant's (Ford's) agent. Therefore, defendant is entitled to summary judgment as to the plaintiffs' claim for breach of an implied warranty.

**D. Misrepresentation Claim**

Finally, plaintiffs bring claims against the defendant for intentional and innocent misrepresentation relating to the car's horsepower output and independent rear suspension. However, defendant asserts that plaintiffs have failed to demonstrate that any misrepresentation was intentional and any claim for innocent misrepresentation is barred by Alabama's economic loss doctrine.

Under Alabama law, to recover on a claim of misrepresentation, plaintiff must demonstrate that: (1) a false representation was made; (2) the misrepresentation concerned an existing material fact; (3) plaintiff reasonably relied on the

misrepresentation; and (4) plaintiff suffered damages proximately resulting from its reliance. *See, e.g., Patel v. Hanna*, 525 So.2d 1359, 1360 (Ala. 1988). The alleged misrepresentation may be either intentional or innocent in order for liability to ensue. *See, e.g., Maring-Crawford Motor Co. v. Smith*, 233 So.2d 484, 487 (1970).

In regard to the horsepower deficiency, defendant does not dispute that it misrepresented to the plaintiff how much horsepower the car had. Defendant acknowledges that it produced advertising indicating that the car had 320 horsepower while the car actually had significantly less horsepower. *See, e.g.*, Defendant's Brief, Exh. 4. However, it asserts that this misrepresentation was not an intentional one. Defendant's Brief at pp. 7-8.

Nonetheless, plaintiffs have put forth sufficient evidence of the defendant's intentional misrepresentation so as to create a genuine issue of material fact. The minutes of a meeting held at Ford in February/March of 1998 reflect a discussion regarding defects with the intake manifold of the engines that were to be placed in the 1999 Ford Mustang Cobra. Plaintiffs' Brief at Exh. 2. This defect was causing a horsepower shortfall in the engine. *Id.* A June 1999 document made as part of the investigation into customer complaints about the car's low horsepower indicated that a problem with the intake manifolds was a culprit. *Id.* at Exh. 13. Jerry Abston, a corporate representative of Ford, indicated that the problem identified in the June 1999 document as causing the horsepower problem is the same problem discussed in the Feburary/March 1998 minutes.

Abston Depo. at 83-84. Therefore, there exists a genuine issue of fact regarding whether Ford knew about the horsepower deficiency of its car prior to the time it advertised it to and sold it to the plaintiff as having 320 horsepower.

Additionally, this misrepresentation concerned a material fact as the car was designed to be a high-performance sports car and the horsepower is directly related to its ability to perform. Jonathan Bennett's Depo. at 30. Plaintiff Jonathan Bennett has also put forth evidence that he relied on this misrepresentation in making his purchase. *Id.* at 30-32.

Furthermore, a genuine issue of material fact exists as to whether the car's "independent rear suspension" was newly designed and the defendant's awareness of this fact. Ford's corporate representative, Jerry Abston, was asked the question, "Do you know when the independent rear suspension used in the '99 Cobra was developed?" In response, Abston stated that, "[t]hey used basically the same design center section of it starting out in the '89 Thunderbird and Cougar." Abston Depo. at 20. Additional testimony from Abston also indicates that this suspension was created for the 1993 Lincoln Mark VIII and merely went through several small adaptions to be attached to the '99 Cobra. Abston Depo. at 40-42. This evidence is sufficient for a jury to decide that the suspension was not "newly designed" and the misrepresentation was intentional.

Finally, this misrepresentation concerned a material fact for the same reason as above. This car was designed to be a high-performance sports-car and the "newly

9

designed" independent rear suspension was advertised as helping this car be high-performance. Jonathan Bennett's Depo. at 30. Plaintiff Jonathan Bennett has testified that a primary reason for his purchase was this "newly designed" independent rear suspension. *Id.* at 30-32.

Therefore, defendant's motion for summary judgment as to the plaintiffs' claim for intentional misrepresentation as to the horsepower deficiency and the "newly designed" suspension should be denied as at least a genuine issue of material fact exists as to all of the prima facie elements.

However, the defendant asserts that plaintiffs' claim for innocent misrepresentation is barred by Alabama's "economic loss doctrine." The economic loss doctrine "bars a plaintiff from recovering under a tort in which the product caused property damage only to itself." *Carrell v. Masonite Corp.*, 775 So.2d 121, 124 (Ala. 2000) *citing Lloyd Wood Coal Co. v. Clark Equip. Co.*, 543 So.2d 671 (Ala. 1989). Alabama courts have applied this rule to a variety of torts including negligence, wantonness and the AEMLD. *Ford Motor Co. v. Rice,* 726 So.2d 626, 631 (Ala. 1998).

However, the Alabama Supreme Court has also stated that, "our holding...does not imply that this Court is adopting the 'economic loss rule' with respect to claims of fraudulent inducement." *Rice*, 726 So.2d at 630. Under Alabama law, "[a]n innocent misrepresentation is as much a legal fraud as an innocent misrepresentation..." *Smith v. Reynolds Metals Co.*, 497 So.2d 93, 95 (Ala. 1986). The Alabama Supreme Court "has

10

often allowed a plaintiff to recover damages under a fraudulent-inducement theory for a purely economic loss to a product itself based upon value that is indicated by a seller's representations but not actually received, even where the product was in fact working properly." *Rice,* 726 So.2d at 631.

Therefore, plaintiffs' claim for innocent fraud is not barred by the economic loss doctrine and defendant's motion for summary judgment as to this claim is denied.

## IV. Conclusion

Based upon all of the foregoing, defendant's motion for summary judgment is **GRANTED** in part and **DENIED** in part. The court, finding no genuine issues of material fact as to plaintiffs' claims for violation of the lemon law, breach of an implied warranty and negligence/wantonness, **ORDERS** that defendant's motion for summary judgment as to those claims is **GRANTED**. Plaintiffs' claims for violation of the lemon law, breach of an implied warranty and negligence/wantonness are **DISMISSED WITH PREJUDICE**. However, the court, finding genuine issues of material fact as to plaintiffs' claim for misrepresentation, **ORDERS** that defendant's motion for summary judgment as to that claim is **DENIED**.

**DONE** and **ORDERED** this the ___2___ day of October, 2002.

Inge P. Johnson
U.S. District Judge

11